UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| DAN GREEN, | Case No.  13-CV-04414-LHK |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | Re: Dkt. No. 48 |
| BIMBO BAKERIES USA, | |
| Defendant. | |

Plaintiff Dan Green ("Plaintiff" or "Green") brings this action against Defendant Bimbo Bakeries USA ("Defendant" or "Bimbo Bakeries"). Compl., ECF No. 1. Before the Court is Defendant's motion for summary judgment. ("MSJ"), ECF No. 44. Green opposes the motion. ("Opp."), ECF No. 48. Defendant filed a reply. ("Reply"), ECF No. 52. Having considered the submissions of the parties, the record in this case, and the relevant law, the Court hereby DENIES Defendant's motion for summary judgment**.**

I.      **BACKGROUND**

A.      **Factual Background**

On September 14, 1987, Entenmann's/Orowheat hired Green in Santa Cruz, California as a

1

1   route sales representative ("RSR"). Compl. ¶ 5. In 2002, Defendant Bimbo Bakeries acquired

2   Entenmann's/Oroweat, and Green became an employee of Bimbo Bakeries. *Id.* ¶ 6. Green

3   continued to work for Defendant until February 22, 2006, when Green left his position at Bimbo

4   Bakeries. *Id.* ¶ 7; Declaration of Ronald D. Arena, ECF No. 44, Exh. A ("Green Depo.") 28:11–

5   13. Green then accepted a position at Svenhards Bakeries. Compl. ¶ 7.

6           In mid-March 2006, Plaintiff alleges that Rick Roberts, the District Manager for Bimbo

7   Bakeries, contacted Plaintiff about returning to work for Defendant. *Id.* ¶ 7. At that point, Plaintiff

8   explained he would only return to Bimbo Bakeries if he would be able to get back his "top

9   seniority," vacations, sick leave bank, and old route. Green Depo. 66:11–15; Declaration of Rick

10   Roberts ("Roberts Decl."), ECF No. 50–1. Following that conversation, Green met with Roberts

11   and Joe Torrise, the Regional Sales Manager for Bimbo Bakeries to discuss Green's potential

12   return. Compl. ¶ 7. According to Plaintiff, Torrise agreed that Plaintiff would return to work for

13   Bimbo Bakeries with Plaintiff's previous seniority, on the condition that Green's co-workers

14   agreed to this status. *Id.* ¶ 7. Plaintiff further alleges that Torrise represented that Green's

15   departure from Bimbo Bakeries would be "considered a leave of absence" rather than a resignation

16   in order to restore Green's seniority. *Id.* ¶ 7. Following this meeting, Torrise held a meeting with

17   the employees who would be affected by Green's return to Bimbo Bakeries. *Id.* ¶ 9. The

18   employees "unanimously approved" Plaintiff's "return and reinstatement to his prior seniority

19   status." *Id.* Plaintiff agreed to return to Bimbo Bakeries based on Torrise's and Roberts'

20   representations regarding his seniority and vacation. *Id.* ¶ 10.

21           In March 2007 and January 2011, Defendant Bimbo Bakeries laid off employees at the

22   Santa Cruz depot where Green worked. *Id.* ¶ 12. Under the collective bargaining agreement

23   ("CBA"), Defendant was required to follow a seniority-based rule in determining layoffs, e.g, "last

24   person hired, first person fired." Declaration of Melvin Barnett in support of Defendant's motion

25   for summary judgment, ECF No. 44-3, Exh. A ("CBA"), § 7. The CBA provides that Bimbo

26

27

28

2

Bakeries shall post a "seniority list" twice a year. *Id.* Once seniority is acquired after certain probationary periods, "seniority shall be effective from the original date of hire" and "shall be terminated by" discharge for cause, resignation, and unapproved leaves of absence longer than six months unless for bona fide illness. *Id.* Green alleges that from his return to Defendant's employ in 2006 to his layoff in January 2013, Bimbo Bakeries posted seniority lists reflecting his 1987 seniority. Compl. ¶ 11. During both the March 2007 and January 2011 layoffs, Green retained his position, consistent with his 1987 seniority. *Id.*

On November 27, 2012, Brad Sebring, the business agent for the Teamsters Union local 912, contacted Green to inform him that Defendant's human resources department had changed Green's "hire" date. *Id.*¶ 14. Sebring had received a payroll authorization form reflecting a new seniority date of April 3, 2006. Declaration of Brad Sebring ("Sebring Decl."), ECF No. 51, ¶ 8. This was the first time Sebring learned of Green's departure from Bimbo Bakeries in February 2006 and subsequent return. *Id.* ¶¶ 7–8. Plaintiff contacted management to dispute the new hire date, but was unsuccessful in amending the date.

In December 2012, Defendant announced layoffs of over 100 employees would take place in 2013. Compl. ¶ 15. On January 5, 2013, Defendant laid off Green. *Id.* Had Green's previous seniority date of September 14, 1987 been used, Green would not have been laid off in January 2013. *Id.*; *see also* MSJ at 6.

**B.    Procedural Background**

Plaintiff filed his Complaint on September 24, 2013. ECF No. 1. Defendant filed an answer on December 31, 2013. ECF No. 11. On June 2, 2014, Defendant filed a motion for leave to amend its answer, which Plaintiff opposed. ECF Nos. 29, 33. The Court granted Defendant's motion to amend its answer on July 7, 2014. ECF No. 39. Defendant filed its amended answer on July 8, 2014. ECF No. 40.

Defendant filed the instant motion for summary judgment and/or summary adjudication on

Case No.:13-CV-04414-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

September 29, 2014. ECF No. 44. Plaintiff filed his opposition on October 14, 2014. ECF No. 48.

Defendant filed a reply on October 21, 2014. ECF No. 52.

## II.     Legal Standard

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party, *id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party, but on an issue for which the opposing party will have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

Case No.:13-CV-04414-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

## III.    DISCUSSION

In the instant action, Plaintiff brings causes of action based on alleged intentional misrepresentations, negligent misrepresentations, violations of California Business and Professions Code § 17200 for unfair business practices, promissory estoppel, and equitable estoppel. The gravamen of Plaintiff's Complaint is that he relied on misrepresentations made by Defendant's agents and employees regarding Plaintiff's seniority in deciding to return to Bimbo Bakeries and leave his position at Svenhards Bakeries.

Defendant contends that regardless of the accuracy or veracity of Plaintiff's allegations, all of Plaintiff's state law claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"). More specifically, Defendant argues that under Ninth Circuit precedent, any alleged oral or written agreement that deviates from the terms of a CBA are preempted. Defendant further argues that resolution of Plaintiff's lawsuit requires the application and interpretation of the CBA, triggering preemption under § 301. In the alternative, Defendant contends that Plaintiff cannot state a cause of action for fraud, and that any claims not preempted by § 301 of the LMRA are preempted by California's Workers' Compensation Act.

The Court begins by addressing the threshold issue of whether Plaintiff's claims are preempted by § 301 of the LMRA. The Court then addresses the remainder of Defendant's arguments.

### A.    Section 301 of the LMRA

On its face, § 301 is a jurisdictional statute which provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Construing § 301 broadly, the Supreme Court has held that § 301 preempts certain state law claims and authorizes federal courts to develop a federal common law of collective bargaining agreement interpretation. *See, e.g.,*

5

United States District Court
Northern District of California

*Local 174, Teamsters of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962). Over the last fifty years, the Supreme Court and Ninth Circuit have clarified the scope of § 301 preemption to be "complete," and have commanded that § 301 must cover "most state-law actions that require interpretation of labor agreements." *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000) (internal citation omitted); *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210–11 (1985). As the Ninth Circuit has explained, the "complete preemption" of § 301 serves the dual purposes of uniformity in the interpretation of collective bargaining agreements and promotion of the federal policy favoring arbitration of labor disputes, "because it prevents parties from evad[ing] the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract." *Balcorta*, 208 F.3d at 1108 (international quotation marks omitted).

As a general matter, § 301 will completely preempt a plaintiff's state law claims where (1) the claims are not based on a right independent of the collective bargaining agreement or (2) adjudication of the claim "necessarily requires the [C]ourt to interpret an existing provision of a [collective bargaining agreement] that can reasonably be said to be relevant to the resolution of the dispute." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 690, 692–93 (9th Cir. 2001) (en banc). Under the first prong, whether a right is "independent" of a collective bargaining agreement does not depend on whether the claim arises from "precisely the same set of facts" as a potential claim pursuant to a CBA dispute resolution process, but rather whether the "legal character" of the claim is such that the right exists separate and apart from any provision in the CBA. *Id.* at 690 (citing *Livadas v. Bradshaw*, 512 U.S. 107, 122–24 (1994)). Under the second prong, the "need to interpret the CBA must inhere in the nature of the plaintiff's claim." *Cramer*, 255 F.3d at 691. Where the meaning of a contract term is undisputed, "the fact that a CBA will be consulted in the course of state law litigation does not require preemption." *Ward v. Circus Circus Casinos, Inc.*, 473 F.3d 994, 998 (9th Cir. 2007). Rather, the "determinative question is whether the state law factual inquiry . . . turn[s] on the meaning of any provision of the collective-bargaining

6

1    agreement." *Id.* (internal quotation marks omitted). Finally, a defense based on a CBA is

2    insufficient to require preemption. *Cramer*, 255 F.3d at 690; *see also Ward*, 473 F.3d at 998.

3    In the instant litigation, Defendant contends that Plaintiff's state law claims are

4    completely preempted under § 301 for two reasons. First, Defendant cites three Ninth Circuit cases

5    for the proposition that "any alleged oral or written agreement that deviates from the terms of an

6    applicable term of the CBA is preempted." MSJ at 2. Defendant relies on *Young v. Anthony's Fish*

7    *Grotto*, 830 F.2d 993 (9th Cir. 1987); *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044 (9th

8    Cir. 1987); and *Chmiel v. Beverly-Wilshire Hotel Company*, 873 F.2d 1283 (9th Cir. 1988).

9    Second, Defendant contends that Plaintiff's claims fall under the second prong of the § 301 test,

10   because Plaintiff's claims require interpretation of the CBA. As an initial matter, the Court rejects

11   Defendant's overly broad interpretation of *Young*, *Stallcop*, and *Chmiel*. Moreover, for the reasons

12   stated below, the Court finds these cases inapposite and concludes that Plaintiff's claims do not

13   require "interpretation" of the CBA as required for § 301 preemption.

14   First, *Young* and *Chmiel* are factually distinguishable. In *Young* and *Chmiel*, the plaintiffs

15   brought breach of contract claims based on alleged oral agreements. Those oral agreements, which

16   allegedly existed separately from the applicable CBAs, directly conflicted with explicit provisions

17   of the CBA. In *Young*, the plaintiff alleged that the defendant made an oral promise that the

18   plaintiff could only be terminated for cause, but that the defendant wrongfully terminated the

19   plaintiff on her first day of employment. 830 F.2d at 996. Under the relevant CBA, however, the

20   defendant had the right to terminate any employee during the first thirty days of employment

21   without cause. *Id.* Any adjudication of the *Young* plaintiff's breach of contract claims would have

22   created a direct conflict between an express term of the CBA and a term of the alleged oral

23   agreement. *See, e.g.*, *Boccignone v. Sutter Healthcare*, No. C 07-06243 CRB, 2008 WL 786908, at

24   *2 (N.D. Cal. Mar. 20, 2008) (discussing *Young*).

25   Similarly, in *Chmiel*, the relevant CBA provided that certain employees, of which plaintiff

26

27

Case No.:13-CV-04414-LHK

28   ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    was one, could be terminated without cause during a designated probationary period. 873 F.2d at

2    1284. The defendant terminated Chmiel within that probationary period, and Chmiel alleged the

3    existence of an "independent agreement" that he could only be terminated for cause. *Id.* at 1285.

4    As in *Young*, the alleged oral agreement was explicitly inconsistent with an express term of the

5    written CBA. To decide whether the oral agreement had been breached would have necessarily

6    required that the Court interpret the CBA. Hence, those breach of oral contract claims were

7    preempted under § 301. Here, in contrast, Plaintiff has alleged no breach of contract claims.

8    Plaintiff has brought no claims that require the Court to adjudicate the enforceability of an

9    agreement that directly conflicts with an express provision of the CBA. *See Boccignone*, 2008 WL

10   786908, at *2.

11           Second, insofar as Defendant relies on *Young*, *Chmiel*, and *Stallcop* for the proposition that

12   any claim, including fraud claims, based on an agreement separate from a CBA must be

13   preempted if the agreement deviates from the CBA, the Court is unpersuaded. As discussed below,

14   Defendant's overly broad interpretation of these cases is inconsistent with United States Supreme

15   Court and Ninth Circuit case law on the scope of § 301 preemption. Moreover, the Court is not

16   convinced that these cases remain good law if construed as broadly as Defendant advocates. All

17   three cases cite and rely on language from *Olguin v. Inspiration Consolidated Copper Co.*, 740

18   F.2d 1468, 1474 (9th Cir. 1984), which held that "any independent agreement of employment

19   could be effective only as part of the collective bargaining agreement," and must therefore be

20   subject to § 301 preemption. Relying on this language, the *Young*, *Chmiel*, and *Stallcop* courts

21   held that the alleged "independent" oral agreements implicated the CBAs with little additional

22   analysis.

23           As another court in this District has recognized, the holding in *Olguin* is consistent with

24   United States Supreme Court cases requiring "interpretation" of a CBA to trigger § 301

25   preemption, because the CBA in *Olguin* "*expressly* provided that it was the sole agreement

26

27

28

8

between the employer and employees." *Walton v. UTV of San Francisco, Inc.* 776 F. Supp. 1399, 1402 (N.D. Cal. 1991). As a result, any alleged independent agreement would necessarily require interpretation of the exclusive CBA. To construe and apply that holding to cases where the CBA did not expressly provide that it was the sole agreement between the employer and employee would render superfluous the § 301 preemption analysis mandated by the Supreme Court and Ninth Circuit. Under Defendant's proposed rule, every separate agreement would automatically be subject to § 301 preemption without further analysis, and there would be no need to determine whether the state law claim implicated a right independent of the CBA or whether the claim necessarily required the Court to interpret a provision of the CBA. *See, e.g.*, *Cramer*, 255 F.3d at 690–93; *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 407–09 (1988) (holding that state law tort claims can exist "independently" of CBAs for § 301 preemption purposes).

In its most recent en banc case addressing § 301 preemption, the Ninth Circuit elaborated on the scope of § 301 preemption. *See Cramer*, 255 F.3d at 689–93. In *Cramer*, the Ninth Circuit distilled the relevant Supreme Court and Ninth Circuit cases as limiting the scope of § 301 preemption to instances where a plaintiff's claims are "founded directly on rights created by [a CBA], and also claims substantially dependent on analysis of a [CBA]." *Id.* at 689 (internal quotation marks omitted). Notwithstanding this Court's reservations about the continued applicability of *Young*, *Stallcop*, and *Chmiel*, these cases can fit within this framework as instances where adjudication of the plaintiffs' claims would have substantially depended on the CBAs because those claims directly conflicted with the terms of the CBAs. The Court declines to read *Young*, *Stallcop*, and *Chmiel* as creating an entirely separate category of state law claims subject to § 301 preemption based purely on the mere existence of an alleged agreement separate from the CBA.

The Court finds further support for the conclusion that *Young*, *Stallcop*, and *Chmiel* turned on direct conflicts with the terms of the CBAs in *Niehaus v. Greyhound Lines, Inc.*, 173 F.3d 1207

9

(9th Cir. 1999). In *Niehaus*, the plaintiff alleged the existence of additional oral agreements that were separate and apart from the CBA. *Id.* at 1211. More specifically, the *Niehaus* plaintiff alleged that the defendant unions had agreed to cooperate with his change in position from management to working level and reinstate his membership in the unions. *Id.* The plaintiff further alleged that the unions fraudulently and negligently misrepresented whether the plaintiff could be discharged as a result of leaving management status to rejoin the union. *Id.* at 1212. The Ninth Circuit concluded the plaintiff's contract and fraud claims were not preempted by § 301. In discussing the contract claims, the *Niehaus* court held that "[w]hile these claims may give rise to contract defenses which reference the [CBA], when the meaning of the terms of a [CBA] are not disputed, the mere fact that a [CBA] will be consulted in the course of state law litigation does not require preemption."

As to the fraud claims, the Ninth Circuit in *Niehaus* affirmed the district court's determination that "resolution of Niehaus' tort claims requires a determination of whether Niehaus knew about the . . . [CBA], not an interpretation of the [CBA]." *Id.* at 1211–12. Unlike in *Young*, *Stallcop*, and *Chmiel*, where the direct conflicts between the separate agreements and CBAs required interpretation of the CBAs, in *Niehaus*, an agreement creating additional rights separate and apart from the CBA was insufficient to trigger preemption. Moreover, as discussed below, at least one other Ninth Circuit case has similarly limited the scope of *Young*, *Stallcop*, *Chmiel*, and their progeny.

Consequently, the Court finds that the fact that Plaintiff's state law fraud claims rely on the existence of an alleged oral agreement separate from the CBA does not necessarily require preemption under § 301. In *Beals v. Kiewit Pacific Co., Inc.*, 114 F.3d 892 (9th Cir. 1997), the Ninth Circuit held that while a plaintiff's breach of contract claim was preempted under § 301, his negligent misrepresentation claim was not subject to preemption. In *Beals*, the plaintiff alleged both breach of contract and negligent misrepresentation claims based on oral representations and a written agreement that deviated from the terms of the relevant CBA. *Id.* at 894. Beals alleged that

10

United States District Court
Northern District of California

1   the defendant had negligently misrepresented under what circumstances he could be terminated.

2   *Id.* To prove negligent misrepresentation, Beals had to show that the defendant had failed to

3   exercise reasonable care in communicating false information to Beals, and that Beals justifiably

4   relied on that information. *Id.* at 895. It was undisputed that the defendant had the right to

5   terminate Beals at any time under the CBA, but that was immaterial to adjudicating the issues of

6   whether the defendant had failed to exercise reasonable care or whether Beals could have

7   reasonably relied on defendant's misrepresentations. *Id.* Importantly, the *Beals* court distinguished

8   *Stallcop* and *Young* as cases where there were disputed CBA terms at issue, triggering § 301

9   preemption. *Id.*

10      In the instant case, the Court finds *Beals* to be instructive. Here, adjudication of Plaintiff's

11   state law claims do not require interpretation of the CBA. Whether Bimbo Bakeries' agents or

12   employees intentionally or negligently misrepresented the terms under which Green could or

13   would return to Bimbo Bakeries does not require the Court to construe or interpret any provision

14   of the CBA. Defendant's mere pointing to the seniority and vacation terms of the CBA is

15   insufficient, as those provisions are clear and, more importantly, undisputed. *See Cramer*, 255

16   F.3d at 691 ("[A]lleging a hypothetical connection between the claim and the terms of the CBA is

17   not enough to preempt the claim . . . ."). Plaintiff does not dispute the meaning or applicability of

18   the seniority, vacation, or layoff provisions, but rather Plaintiff alleges that Defendant either

19   knowingly or negligently misrepresented the conditions under which Plaintiff could or would

20   return to Bimbo Bakeries' employ. That the Court may have "to look at" terms of the CBA in

21   evaluating Plaintiff's claims is insufficient: "in the context of § 301 complete preemption, the term

22   'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'"

23   *Balcorta*, 208 F.3d at 1108.

24      Simply put, Defendant has failed to show that Plaintiff's claims require the Court to

25   construe or interpret any terms of the CBA. While Defendant asserts that "seniority" has different

26

27

28

Case No.:13-CV-04414-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1  meanings in various sections of the CBA, Defendant fails to identify any instances where the

2  meaning of "seniority" is in dispute for purposes of Plaintiff's claims. Defendant also argues that

3  Plaintiff's claims implicate the rights of other union members because another employee would

4  have been laid off in Plaintiff's stead. Defendant fails to explain the relevance of this hypothetical.

5  Conjecture regarding the secondary effects of a plaintiff's claims is insufficient to warrant

6  preemption under § 301. *See Cramer*, 255 F.3d at 691–92. The Court concludes that Plaintiff's

7  claims are not preempted under § 301 of the LMRA.

8       The Court therefore denies Defendant's motion for summary judgment on § 301

9  preemption grounds.

10       **B.      Fraud Claims**

11       Defendant also argues that all of Plaintiff's causes for action require Plaintiff to show that

12  the alleged misrepresentations were false at the time they were made. MSJ at 14 (citing *Engalla v.*

13  *Permanente Medical Grp., Inc.*, 15 Cal. 4th 951, 974 (1997); Judicial Council of Cal. Civ. Jury

14  Instructions, Nos. 1900, 1903 (2014); Cal. Civ. Code §§ 1572, 1709, 1710). Plaintiff does not

15  dispute that he must show that Defendant's agents knew or should have known that the

16  representations were false at the time they were made. *See* Opp. at 6–9. Instead, Plaintiff contends

17  there is a genuine factual issue for trial. The Court agrees.

18       Plaintiff cites sufficient evidence to raise a genuine issue of fact as to Defendant's alleged

19  knowledge of falsity at the time of the representations. More specifically, Plaintiff relies on Rick

20  Roberts' declaration, the District Manager at the time, for Roberts' statement that Joseph Torrise,

21  the Regional Sales Manager, "told Mr. Green the Company would classify Mr. Green's departure

22  from the Company as a leave of absence." Roberts Decl. at 2. According to Roberts, Torrise failed

23  to disclose that human resources had directed Torrise to only rehire Plaintiff with Plaintiff's

24  previous vacation weeks and not Plaintiff's previous seniority. *Id.* Plaintiff further notes that

25  Torrise himself admits that he had actual knowledge that Plaintiff "would not be able to retain his

26

27

28

12

seniority for any other purpose" than vacation. Declaration of Joe Torrise, ECF No. 44-2, ¶ 3. In his deposition, Torrise acknowledges he knew that Plaintiff wanted to "get all of his seniority back." Duckworth Decl., Exh. 2 (Torrise Deposition), ECF No. 50, 29:6–8. Moreover, there are stark inconsistences between Torrise's statements and those of Green and Roberts regarding the occurrence of certain meetings and the content of those meetings. *See, e.g.*, Torrise Deposition 37:14–15; Roberts Decl. at 2. Based on this evidence, the Court concludes that there is a genuine dispute as to whether Torrise knowingly or negligently made representations regarding Green's seniority that Torrise knew were false at the time. *See Anderson*, 477 U.S. at 248. Defendant's citations to inconclusive statements by Plaintiff during his deposition are insufficient to show that there is an "absence of evidence" supporting Plaintiff's fraud claims.

The Court therefore denies Defendant's motion for summary judgment on Plaintiff's fraud claims as there is a genuine issue of material fact.

### C.     California Workers' Compensation Act

Finally, Defendant argues that Plaintiff's claims are also preempted by the California Workers' Compensation Act. The Court concludes that Plaintiff's claims are not subject to the exclusive remedy rule under the Workers' Compensation Act and are therefore not preempted.

There is a two-step inquiry to determine whether there is preemption under the California Workers' Compensation Act. First, the court was must determine whether the plaintiff's injury arises in and out of the course of employment. *See Shoemaker v. Myers*, 52 Cal. 3d 1, 15 (1990). Second, "if the injuries did arise out of and in the course of employment, the exclusive remedy provisions apply notwithstanding that the injury resulted from the intentional conduct of the employer, and even though the employer's conduct might be characterized as egregious," unless the employer stepped out of its proper role or engaged in conduct of questionable relationship to the employment. *See id.*; *see also Lenk v. Total-Western, Inc.*, 89 Cal. App. 4th 959, 970 (Ct. App. 2001).

13

United States District Court
Northern District of California

The parties dispute whether Plaintiff's injury arises in and out of the course of employment. Defendant relies on *Spratley v. Winchell Donut House, Inc.*, 188 Cal. App. 3d 1408, 1416 (Ct. App. 1987), where the California Court of Appeal held that the plaintiff's claims that the employer fraudulently concealed unsafe working conditions to induce the plaintiff's employment were preempted under the Workers' Compensation Act. However, *Spratley* is factually distinguishable. In *Spratley*, the defendant misrepresented the safety of the work site, resulting in the plaintiff being assaulted by a third party. *Id.* The *Spratley* court noted that employers have a duty to provide safe places of employment, and that the Workers' Compensation Act not only included compensation for injuries arising out of unsafe work place conditions, but also specifically contemplated enhanced compensation in cases involving serious and willful employer misconduct. *Id.* at 1411. As a result, the court concluded the plaintiff could not circumvent the exclusive remedy rule in light of the nature and cause of her injuries. *Id.*; *see also Lenk*, 89 Cal. App. 4th at 973. Here, however, Plaintiff was not injured as a result of an unsafe work place condition, but rather as a result of Defendant's alleged misrepresentations regarding the terms under which Plaintiff would return to Defendant's employ.

The Court finds that Plaintiff's claims are more akin to the fraudulent inducement claims at issue in *Lenk v. Total-Western, Inc*. In *Lenk*, another California Court of Appeal held that an employer's misrepresentations intended to induce the plaintiff to become an employee were "not a normal part of the employment relationship or a risk reasonably encompassed within the compensation bargain." 89 Cal. App. 4th at 972. The employer in *Lenk* misrepresented the financial stability of the company, the company's plans to relocate, and the terms of the plaintiff's future promotions. *Id.* at 973. The *Lenk* court distinguished *Spratley* as being particularly animated by workplace safety, which "is clearly an issue contemplated by the workers' compensation statutory scheme . . . [and] a normal part of the employment relationship and a risk reasonably encompassed within the compensation bargain." *Id.* Here, even if Defendant is correct that

14

United States District Court
Northern District of California

Plaintiff's emotional distress damages arise, at least in part, based on his termination, the Court concludes that the second step of the exclusive remedy rule defeats preemption. Misrepresentations about whether Bimbo Bakeries could or would return Defendant to his prior seniority are not a "normal part of the employment relationship or a risk reasonably encompassed within the compensation bargain." *See id.*; *see also Lazar v. Superior Court*, 12 Cal. 4th 631 (1996) (holding that misrepresentations designed to induce employment may support recovery of tort damages outside of Workers' Compensation Act); *Finch v. Brenda Raceway Corp.*, 22 Cal. App. 4th 547 (Ct. App. 1994) (same). As the *Lenk* court put it, one would "hope" that fraudulent misrepresentations to induce employment would not be a normal part of the employment relationship. 89 Cal. App. 4th at 793.

In sum, the Court concludes that Defendant stepped outside of its proper role when it allegedly made fraudulent representations to induce Green to return to Defendant's employ. As such, Plaintiff's claims are not subject to the exclusive remedy rule under the California Workers' Compensation Act.

## IV.    CONCLUSION

For the reasons stated above, the Court DENIES Defendant's motion for summary judgment.


**IT IS SO ORDERED**.

Dated: January 12, 2015

*Lucy H. Koh*

LUCY H. KOH
United States District Judge

Case No.:13-CV-04414-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT